GEORGE E. McKERNON, APPELLANT, *v.* EDWARD P. BLACK, AN INCOMPETENT PERSON, BY FIRST NATIONAL BANK OF NEVADA, RENO, NEVADA, A CORPORATION, HIS GUARDIAN, RESPONDENT.

No. 3808

March 19, 1956.                              294 P.2d 913.

*George E. McKernon,* in propria persona, of Reno, *Guild, Busey & Guild,* of Reno, for Appellant.

*Cantwell & Loomis,* of Reno, for Respondent.

## OPINION

By the Court, EATHER, J.:

This is an action brought by Black, an incompetent person, through his guardian, the First National Bank of Nevada, to recover the sum of $4,250 upon a promissory note executed by McKernon, plus interest. McKernon counterclaimed for sums due him for professional services rendered to Black as his attorney from 1942 to 1950 terminating upon the declaration of Black's incompetency and appointment of his guardian. In the trial court the action developed into an accounting upon the counterclaim. The trial court, sitting without a jury, found that McKernon had rendered services of a value of $23,750; that Black had paid on account the sum of $22,000, leaving a balance due McKernon in the sum of $1,750 which, offset against the note left Black entitled to judgment upon the principal of the note in the sum of $2,500, plus interest amounting to $882.46, and attorneys' fee in the sum of $400. Judgment in favor of Black was rendered in the sum of $3,782.46. McKernon has taken this appeal.

Essentially the question is one of fact; whether the evidence supports the finding of the trial court. McKernon attacks the findings in two respects. (1) The court found that no contract existed between the parties and that McKernon's right to recovery was dependent upon the reasonable value of services performed. McKernon contends that a contract existed between himself and Black whereby Black was to pay him $2,500 a year retainer from 1942 to 1950, plus additional fees for extraordinary services. (2) McKernon disputes the court's findings as to the reasonable value of his services and as to payments on account creditable to Black.

McKernon emphasizes that his testimony upon these matters was undisputed. The trial court recognized this but expressly refused to give full acceptance to such testimony. In ruling upon McKernon's motion for new trial, it stated: "It would be gainsaying the record to assert that any witness directly contradicted the defendant's testimony on that subject. That he was impeached by proof of inconsistent statements, and that his testimony seemed to the Court inherently improbable in view of the defendant's professional status, cannot be argued, at least not at this time. * * * The court prefers to rely on the rule, 'that the mere assertion of any witness does not of itself need to be believed, even though it be unimpeached in any manner; because to require such belief would give quantitative and impersonal measure to testimony.' "

In support of the position adopted by the trial court it may be noted that McKernon's testimony as to the existence of a contract and as to credits could not categorically be denied. The only witnesses were Black and his wife. By the time of the trial Black had been adjudged incompetent and his wife was dead. It may be noted as well that McKernon's testimony in these respects was subject to inconsistencies which cannot be said to have been fully and persuasively explained. As to the value of his services, his testimony was lacking in detail. Considering the nature of the relationship between McKernon and Black and the fact of Black's incompetency, known to McKernon well in advance of the court adjudication, the trial court might well have imposed a greater burden of precise proof upon McKernon than otherwise might have been held acceptable. Upon a full reading of the record we are convinced that the court's findings are supported and that no error has been shown.

Affirmed with costs.

MERRILL, C. J., and BADT, J., concur.